UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORA EUGENIA WILLIAMS,
O/B/O JNN, a Minor

      Plaintiff,                        Civil Action No. 16-13608

v.                                      HON. THOMAS J. LUDINGTON
                                          U.S. District Judge
                                          HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Cora Eugenia Williams ("Plaintiff") brings this action on behalf of minor JNN ("Claimant") under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying the application for Childhood Supplemental Security Income under Title XVI of the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Docket #23] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Docket #20] be DENIED.

# PROCEDURAL HISTORY

Plaintiff, proceeding on behalf of Claimant, applied for Childhood Supplemental Security Income on September 19, 2013, alleging disability as of October 12, 2002 (Tr. 169). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on May 20, 2015 in Detroit, Michigan (Tr. 46). Administrative Law Judge ("ALJ") David F. Neumann presided (Tr. 46). Claimant and Plaintiff (Tr. 50-53, 53-55, 55-61), represented by attorney Daraysha McLeod, both testified. On June 23, 2015, ALJ Neumann found Claimant not disabled (Tr. 23-40). On August 5, 2016, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the final decision on October 10, 2016.

# BACKGROUND FACTS

Claimant, born October 12, 2001, was 15 when ALJ Neumann issued his decision (Tr. 40, 169). The application for benefits alleges disability due to hyperactivity, impulse control problems, and asthma (Tr. 180).

**A. Claimant's Testimony**

Claimant offered the following testimony:

After the school day ended, he generally played basketball (Tr. 54). He played football once a week and boxed in his free time (Tr. 54). He enjoyed watching professional basketball (Tr. 54). He did not listen to music on a regular basis (Tr. 54). He spent 30 to 60 minutes doing homework each day and helped with household chores such as taking out the trash, cleaning the kitchen and bathroom, and washing dishes (Tr. 54-55). He was able to

care for his own personal needs such as grooming, dressing for school, and bathing (Tr. 53).

### B. Plaintiff's Testimony

Plaintiff offered the following testimony regarding Claimant's limitations:

Claimant had been placed in regular classes, but as of February, 2014 also spent two to four hours a week in an Individualized Educational Program ("IEP") (Tr. 51). He did not experience physical developmental problems but experienced behavioral problems such as "outbursts," "yelling," fighting, distractability, and lack of focus (Tr. 52). He had been experiencing such problems since the age of nine (Tr. 52). He had been using an Albuterol inhaler for asthma (Tr. 53). He did not experience medication side effects (Tr. 53).

In addition to Claimant's time in the IEP, Family Services provided a therapist who came to school on an as-needed basis for therapy or observation (Tr. 56). Outside of the school setting, Claimant also treated with a therapist and had been prescribed Vyvanse by a psychiatrist (Tr. 56). He had been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), Obsessive Compulsive Disorder ("OCD"), Post Traumatic Stress Disorder ("PTSD"), and Oppositional Defiant Disorder ("ODD") (Tr. 57-58). Most of his class time was spent getting him to focus on his work (Tr. 59). He had received one "in-school" and multiple "out of school" suspensions (Tr. 59). He had been suspended for "fighting, being disruptive, talking back to the teacher, [and] walking out of class without permission" (Tr. 60). He had been suspended around 10 times in the last five months (tr. 61). His homework typically took two to three hours due to his distractibility (Tr. 59). He also required constant

redirection to finish household chores (Tr. 60). Claimant had a number of good friends but sometimes argued with them (Tr. 60).

    **C.    Medical and Academic Evidence[1]**

**1. Treating and Academic Sources**

In September, 2007, Claimant received emergency treatment for respiratory distress after his nebulizer broke (Tr. 279). Imaging studies of the chest were unremarkable (Tr. 281). Claimant was treated for a knee injury in August, 2008 (Tr. 265). Plaintiff reported that Claimant used Albuterol for the condition of asthma but had not been hospitalized for asthma since 2006 (Tr. 265). In April, 2011, Claimant received treatment for asthma after experiencing wheezing for one day (Tr. 309). His symptoms were improved with breathing treatments (Tr. 309). Treating records note a pulse ox of 100 percent (Tr. 311).

In March and October, 2012, Claimant was prescribed a nebulizer (Tr. 314, 316). A March, 2012 academic evaluation states that Claimant "very often" failed to listen when spoken to, had difficulty organizing, avoided tasks that required sustained concentration, exhibited hyperactive tendencies, interrupted others, lost his temper, did not follow rules, and engaged in antisocial behavior (Tr. 318-322). He enjoyed "average" relationships with his peers but his disruption of class procedure and following directions was "problematic" (Tr. 319). One teacher noted that working with Claimant *alone* was "no problem" but that he

---

[1]Treatment for conditions unrelated to the disability claim, while reviewed, are omitted from the present discussion.

exhibited disruptive behavior in a group setting (Tr. 323). The same month, pediatric records state that symptoms of asthma were "mild" (Tr. 325). Claimant was described as "talkative" (Tr. 326). Notes by behavioral health services from the following month note diagnoses of ADHD and ODD (Tr. 332, 342).

February, 2013 pediatric records note a diagnosis of chronic, "intermittent" asthma (Tr. 342-343). Claimant's mother requested that he resume psychotropic medication due to distractability (Tr. 343). Treating notes state that he alternated between living with his mother and living with his aunt (Tr. 352). Claimant was referred for mental health treatment (Tr. 345). Mental health treatment records from the following month note that Claimant was currently in the fifth grade and maintained a "B" average (Tr. 353). Claimant failed to appear for a followup appointment (Tr. 358). In September, 2013, Claimant was placed in regular education without special instruction (Tr. 372).

In December, 2013, Claimant's sixth grade teacher completed a questionnaire, noting that Claimant was reading and writing at the fifth grade level and calculating at the fourth grade level (Tr. 193). The teacher found no problems in "Acquiring and Using Information" but experienced "very serious" problems in "Attending and Completing Tasks;" "Interacting and Relating With Others;" and "Caring for Himself," noting that Claimant had been suspended three times for fighting (Tr. 194-196).

A February, 2014 IEP report noted "need" areas of academic performance and socio-emotional behavior (Tr. 381). The report noted "low average" academic skills (Tr. 381). An

addendum from the next month noted Claimant's school suspensions for fighting and mood swings, verbal outbursts, and temper control problems (Tr. 381). The following month, Plaintiff reported that Claimant's "acting out" and impulse control problems appeared to be related to "traumatic events of [the] past," including the recent death of an uncle (Tr. 445). October, 2014 treating records note a cooperative attitude and appropriate appearance (Tr. 424, 429-431). Claimant was noted to be improving in IEP (Tr. 415). In November, 2014, he was given a "good" prognosis for resolution of problems stemming from ADHD, ODD, and PTSD (Tr. 397). He was assigned a GAF of 53[2] (Tr. 400). He was not deemed a "high risk" individual (Tr. 400). December, 2014 treating records note an improvement in concentration (Tr. 433). Claimant appeared fully oriented with intact short and long-term memory skills (Tr. 437).

### 2. Non-Treating Sources

In January, 2014, pediatrician Tariq Mahmoud, M.D. performed a non-examining review of the records pertaining to Claimant's physical condition, finding that Claimant's symptoms resulting from asthma were non-disabling (Tr. 79-80). The same month, David Hayter, Ph.D. performed a mental status examination on behalf of the SSA, noting that Claimant's average grades were "Es" with his best subject being math and worst, Social

---

[2] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* (*DSM-IV-TR* )(4th ed.2000).

Studies (Tr. 376). Dr Hayter observed that Claimant was alert and fully oriented with a cooperative attitude and "bright" affect (Tr. 376-377). He exhibited good short-term memory (Tr. 377). Dr. Hayter concluded that Claimant was able to "interact appropriately," ask questions, and follow simple directions (Tr. 378). Dr. Hayter noted a diagnosis of ADHD and assigned a GAF of 65[3] (Tr. 378).

The following month, Zara Khademian, M.D. performed a non-examining review of the school and psychological treating records, finding that Claimant experienced "less than marked" limitation in the domains of "Acquiring and Using Information," "Attending and Completing Tasks," "Interacting an Relating With Others," "Caring for Yourself," and "Health and Physical Well-Being" (Tr. 78-79). She found no limitation in the domain of "Moving About and Manipulation of Objects" (Tr. 78).

**D. The ALJ's Decision**

Citing the medical records, ALJ Neumann found that Claimant experienced the severe impairments of asthma, ADHD, ODD, and PTSD but that none of the conditions met or medically equaled any listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1 (Tr. 26). The ALJ found that in the domain of "Acquiring and Using Information," Claimant had "less than marked limitation" (Tr. 32). The ALJ acknowledged that the academic testing scores were "low" or "very low," but noted that Claimant was taking general education

---

[3] GAF scores in the range of 61 to 70 suggest "some mild symptoms or some difficulty in social, occupational, or school functioning." *American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders* ("*DSM–IV–TR*"), 34.

classes (Tr. 32). He cited Clamant's sixth grade teacher's finding that Claimant had "no problems" in acquiring and using information (Tr. 32). In the domain of "Attending and Completing Tasks, the ALJ found that Claimant's limitation was also "less than marked," noting the consultative examiner's finding of "no problem performing simple tasks," good memory, and a good relationship with his mother and siblings (Tr. 34). He cited the consultative examiner's finding that "the fighting and acting out may be learned behavior" (Tr. 34). The ALJ acknowledged that the consultative findings stood at odds with Claimant's sixth grade teacher's finding of "very serious impairment" (Tr. 34).

In the domain of "Interacting and Relating to Others," the ALJ again found that Claimant had "less than marked" limitations (Tr. 35). He also cited the consultative examiner's observation that Claimant was "able to form a rapport" and reported that he had friends at school and in his neighborhood (Tr. 36). The ALJ found no limitation in the domain of "Moving About and Manipulating Objects," noting that Claimant was able to ride a bike, play video games, use a computer, and play a number of sports (Tr. 36-37). The ALJ found "less than marked" limitation in "Caring for Yourself" noting that while Claimant was noncompliant in taking medication, the consultative examiner found no limitations (Tr. 38-39).

Finally, the ALJ found "less than marked" limitation in the domain of "Health and Physical Well-Being," observing that despite a diagnosis of asthma, Claimant had not received emergency or inpatient treatment (Tr. 39). The ALJ noted that the claim of

disability resulting from ADHD was undermined by Claimant's failure to take his medicine as directed (Tr. 39).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

### **Childhood Benefits**

42 U.S.C. § 1382c (a)(3)(C)(I) provides that "[a]n individual under the age of 18 shall be considered disabled" if he or she "has a medically determinable physical or mental impairment which results in marked and severe functional limitations."[4] In evaluating whether a child is disabled, the Commissioner is to consider, in sequence, whether the child claimant 1) is "doing substantial gainful activity" 2) has a severe impairment, and if so 3) has "an impairment(s) that meets, medically equals, or functionally equals the listings." 20 C.F.R. § 416.924(a). In determining whether the child claimant is disabled at the third step, the Commissioner determines functional ability in six domains:

    (i) Acquiring and using information;

    (ii) Attending and completing tasks;

    (iii) Interacting and relating with others;

    (iv) Moving about and manipulating objects;

    (v) Caring for yourself; and,

    (vi) Health and physical well-being.

---

[4] Childhood claims are subject to the same 12-month durational requirement as adult claims. 42 U.S.C. § 1382c (a)(3)(C)(i)

20 C.F.R. § 416.926a(b)(1).

To establish disability at the third step, "the impairment(s) must . . . result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Id.* A "marked" limitation is defined as an impairment(s) that "interferes seriously" with the ability "to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation "interferes *very* seriously" with the ability "to independently initiate, sustain, or complete activities"(emphasis added). 20 C.F.R. § 416.926a(e)(3).

## ANALYSIS

Plaintiff argues, in effect, that the ALJ erred by finding "less than marked" limitation in the domains of "Attending and Completing Tasks" and "Interacting and Relating with Others." *Plaintiff's Brief,* 18-24*, Docket #20,* Pg ID 520. Citing SSR 06-03p, she faults the ALJ for rejecting the findings of Claimant's teachers in favor of the consultative and non-examining medical source opinions. *Id.* at 17; 2006 WL 2329939, at *2 (Aug. 9, 2006)*.

### A.  Attending and Completing Tasks

In this domain, a six to twelve-year-old "should be able to focus . . . attention in a variety of situations including follow directions, organizing school material, completing homework assignments, staying 'on task,' completing family chores, changing clothes, and participating in group sports." 20 C.F.R. § 416.926a(h). In the age group 12 to 18, individuals "should be able to pay attention to increasingly longer presentations and discussions," maintain concentration

"while reading textbooks," make long-term academic plans, organize materials, practice good time management, and not be "unduly distracted" by peers or "unduly distracting to them." *Id.* [A] 'marked' limitation can be shown with "a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning . . ."§ 416.926a (e). However, determination of a "marked" or "extreme" limitation does not "rely on any test score alone." *Id.* "No single piece of information taken in isolation can establish" the existence of "marked" or "extreme" limitation. *Id.*

Plaintiff urges the Court to adopt the December, 2013 findings of Claimant's sixth grade teacher who found "very serious" problems in attending and completing tasks characterized by classroom disruptions and suspensions (Tr. 194-196). She also cites March, 2012 fourth grade records showing that Claimant failed to listen, experienced organizational problems, lost his temper, and did not follow the rules (Tr. 318-322).

Claimant's teachers are categorized as "other," "non-medical sources." SSR 06-03p at *2. While "other source" evaluations are not entitled to controlling weight, information provided by such sources "may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.* at *2. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011)(While psychological counselor's opinion not entitled to the deference accorded an "acceptable" treating source opinion, "[the] opinion . . . entitled to consideration by the Commissioner").

Notwithstanding the academic reports, substantial evidence supports the ALJ's finding that Claimant's limitation in this domain was less than marked. The ALJ cited Dr. Hayter's consultative examination finding that Claimant exhibited intact memory and the ability to focus during the examination (Tr. 34). Again citing Dr. Hayer's findings, the ALJ noted that while Claimant had been suspended for fighting, the behavior could be attributable to "learned behavior" and that Claimant enjoyed a good relationship with his siblings and mother (Tr. 34). The ALJ also cited Dr. Khademian's non-examining finding that Claimant experienced "less than marked" limitation in attending and completing tasks (Tr. 30, 78). The ALJ noted that the claim of disabling limitation in this domain was also undermined by the treating pediatrician's March, 2013 finding that Plaintiff was non-compliant with giving Claimant the prescribed psychotropic medication (Tr. 34).

Plaintiff takes issue with two of the ALJ's factual findings regarding this domain. First, he disputes the finding that Claimant "had no problems performing simple tasks," noting that Dr. Hayter found that Claimant was *limited* to performing "simple, routine, repetitive, concrete, tangible tasks." *Plaintiff's Brief* at 19 (*citing* Tr. 34, 78)(emphasis added). However, the ALJ's finding accurately summarizes Dr. Hayter's findings, which include a cooperative attitude, "bright" affect," good short-term memory, appropriate interaction, and the ability to ask questions and follow simple directions (Tr. 378).

Plaintiff also faults the ALJ for finding that Claimant's non-compliance with the psychotropic medication regime unfairly punishes Claimant rather than his adult caregivers. *Id.*

at 20. It is without dispute that Claimant is not responsible for the failings of his caregivers. However, the ALJ did not err in noting that the Plaintiff in this case (Claimant's mother) undermined her claim that her son was disabled by ignoring his pediatrician's recommendations and the prescribed medication regime (Tr. 29, 34). *See Williams v. Colvin*, 2015 WL 5735126, at *5 (E.D.Mo. September 29, 2015)(*citing Wildman v. Astrue*, 596 F.3d 959, 968–69 (8th Cir. 2010))(Caregivers' non-compliance in administering prescription medicine permissibly used to undermine the disability claim notwithstanding that childhood Claimant "was not responsible" for his caregivers' failures). The treating records from the second half of 2014 that Claimant's behavioral problems were at least partially alleviated with therapy despite his only partial compliance in taking the prescribed medication (Tr. 415, 424, 429-431). Finally, Plaintiff's assertion that the ALJ did not consider the fourth grade records also showing significant limitation is flatly contradicted by the ALJ's citation to the records from this period (Tr. 28-29).

Because substantial evidence supports the ALJ's finding of less than marked limitation in this domain, a remand on this basis is not warranted.

### B. Interacting and Relating with Others (pg. 21)

In this domain, a six to twelve year-old is expected to form "more lasting friendships" with like-aged children, work in groups, solve problems, "tolerate differences," talk to individuals of "all ages," and communicate ideas to both "familiar and unfamiliar" listeners. § 416.926a(i). Individuals aged 12 to 18 should "be able to initiate and develop friendships" with peers, "relate appropriately to other children and adults . . . both individually and in groups." *Id.* They should

be able to "solve conflicts" between peers, family members, and non-family adults and "recognize that there are different social rules" for peers and adults. *Id.* They should be able to express their feelings, "ask for assistance," "tell stories[]" in all kinds of environments including "home, classroom, sports, extra-curricular activities, or part-time job." *Id.*

Plaintiff's argument that the record supports a finding of marked limitation in this domain is likewise not well taken. Plaintiff points out that the sixth grade teacher found "very serious" limitation as a result of three suspensions for fighting and Claimant failed to follow the teacher's guidelines. *Plaintiff's Brief* at 22. Plaintiff also notes her own testimony that Claimant fought with his friends. *Id.* (*citing* Tr. 60).

To be sure, a portion of the evidence supports the finding of marked limitation in this domain. The sixth grade teacher found that Claimant experienced "a very serious problem" in almost all aspects of this domain (Tr. 196). However, the ALJ did not err in rejecting the teacher's conclusion that the limitation was "less than marked." The ALJ provided a lengthy and accurate discussion of the sixth grade teacher's findings and Plaintiff's testimony (Tr. 28, 35-36). However, the ALJ accorded significant weight to Dr. Hayter's consultative findings and Dr. Khademian's non-examining conclusions over the teacher assessment forms and Plaintiff's testimony, citing Dr. Hayter's observation that Claimant had the ability to form a rapport and interact appropriately (Tr. 36). The ALJ noted Claimant's report to Dr. Hayter that he "did chores, played basketball, and enjoy[ed] dancing and skating" (Tr. 36). The ALJ noted that unlike the academic sources, Drs. Hayter and Khademian had benefit of the evidence in medical

file as well as the educational records (Tr. 36). While Plaintiff testified that her son argued with his friends, the ALJ reasonably concluded that Claimant's ability to regularly participate in "team sports undermine[d] a finding of [marked limitations]" (Tr. 36). Because the ALJ's findings pertaining to this domain are well explained and supported by substantial evidence, Plaintiff's arguments should be rejected.

In closing, my recommendation to uphold the Commissioner's decision should not be read to trivialize Claimant's significant stressors which include the death of his uncle, a move to a new town, and a change of school. The fact that I might find differently upon *de novo* review is of no import; because the ALJ's decision was within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court. *Mullen v. Bowen, supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment [Docket #23] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Docket #20] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections

which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

> s/ R. Steven Whalen
> R. STEVEN WHALEN
> UNITED STATES MAGISTRATE JUDGE

Dated: October 31, 2017

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on October 31, 2017, electronically and/or by U.S. mail.

> s/Carolyn M. Ciesla
> Case Manager to the
> Honorable R. Steven Whalen